No. 15,915.

The City of Fort Wayne *v.* The Lake Shore and Michigan Southern Railway Company.

Municipal Corporations.—*Right to Alienate Property.*—*Limitation of.*—A municipal corporation possesses the implied right to alienate its property, real or personal, of a private nature, unless restrained by charter or statute, but it can not dispose of property of a public nature in violation of the trust upon which it is held. There is a distinction between property purchased for a public use, and not yet dedicated, and property purchased for that purpose and actually dedicated to that use. A deed which vests title to property in a municipal corporation may be of such a character as to dedicate the property to a public use, and where a deed vests the title to property in fee simple in the municipal corporation without limitation or restriction as to its alienation, the corporation has the right, any time before it is dedicated to a public use, to dispose of the property.

Same.—*Deed by to a Railroad Company.*—*Reservation in.*—Where a city, in making a deed to a railroad company, reserved the right to cross the tracks of the company with its streets and alleys when the city should make an addition of certain land, such reservation will not operate in favor of the corporation until it has made such addition. A reservation in a deed can not be extended beyond its terms.

Railroad.—*Right of Way.*—*Crossings.*—*Taking Longitudinally for a Highway.*—Railroad companies acquire the right to construct their tracks subject to the dominant right of the State to cross such tracks when the public necessity demands that new roads and streets shall be opened, but the right to take longitudinally is quite a different thing

from the right to cross, and is governed by different rules. A municipal corporation, in the absence of legislation expressly or by necessary implication authorizing it, can not take a part of the right of way of a railroad company by constructing a public highway longitudinally to the right of way.

SAME.—*Right of Highway to Cross.—Limitation of.*—The rule that allows the construction of streets and other public highways across railroad tracks has its limitations. They can not be so constructed when by so doing the railroad company would be unable to use its track at the point of crossing for the purpose for which it was constructed.

LAND.—*Appropriation to Public Use.—Diversion to Other Use.*—Where, pursuant to legislation, land is appropriated to an important public use, it can not afterwards be taken for a use wholly inconsistent and different from the first unless such, by express words, or by necessary implication, appears to be the intent of the Legislature.

From the Allen Superior Court.

*H. Colerick*, for appellant.

*G. C. Green, O. G. Getzendanner* and *J. H. Baker*, for appellee.

COFFEY, J.—This was an action brought by the appellee against the appellant, the city of Fort Wayne, to enjoin the latter from opening a street across the yard and tracks of the appellee situated within the limits of the city. The material facts in the case, as they appear in the special findings of the court, are, that in the year 1866, the city of Fort Wayne acquired a tract of land in fee simple, by purchase and deed, contiguous to the city for the purpose of a public park. The deed to the city contained no limitation nor conditions as to the purpose for which the land was purchased or was to be used, nor did it contain any restrictions as to the power of the city to convey the same. On the 23d day of March, 1869, and before any steps had been taken to convert the ground into a public park, the common council of the city adopted a resolution by the terms of which it granted to the Fort Wayne, Jackson and Saginaw Railroad Company twenty acres of the land off of the west side of the tract, upon the condition that the railroad company should run its line through the tract so granted, and locate its depots for local

purposes thereon, and also locate any shops it might find necessary to build at Fort Wayne upon the same tract; and upon the further condition that the property and the north side addition to Fort Wayne should become annexed to and become a part of the city of Fort Wayne. The resolution further provided that when the railroad company had complied with the conditions of the grant the mayor of the city should execute to it a deed of conveyance for the land donated. The city also reserved the right to cross the tracks of the appellant whenever it should determine to lay off an addition composed of the remainder of the tract.

The donation of this land was made for the purpose of inducing the railroad company to make the city of Fort Wayne its southern terminus, and to induce it to locate its depots for local purposes and its shops thereon. Prior to February, 1871, the railroad company accepted the donation on the terms and conditions expressed in its resolution, took possession of the land and constructed its road-bed through the same, put in side tracks and switches, and erected a depot building thereon on the faith of the resolution, and located its yards on the ground for making up its trains, storing cars and conducting its business as a passenger and freight railroad, and prior to the 12th day of March, 1872, had expended in so doing several thousand dollars. On the 12th day of March, 1872, the common council of the city passed a resolution directing the mayor of the city to execute to the railroad company a deed for the land, which he accordingly did on the 26th day of the same month.

At the time the first resolution above referred to was adopted, one Edgerton was a member of the common council of the city of Fort wayne, and he was at the same time vice-president of the railroad company.

The common council consisted of sixteen members, nine of whom voted for the resolution and seven against it, Edgerton voting for the resolution; but when the last resolution, directing the mayor to execute the conveyance was

passed, Edgerton was not a member of the common council. On the 8th day of April, 1873, the common council of the city of Fort Wayne passed a resolution attempting to rescind both the resolutions above mentioned upon the alleged ground that the city had no power to bargain away the land therein described, and upon the alleged ground that the railroad company had not complied with the conditions of the grant. The resolution also required the city attorney to take such steps as might seem to him necessary to avoid the deed executed by the mayor of the city, but so far as appears no action was taken by him. On the 31st day of December, 1879, the Fort Wayne and Jackson Railroad Company succeeded to all the rights of the Fort Wayne, Jackson and Saginaw Railroad Company, and on the 24th day of August, 1882, the Fort Wayne and Jackson Railroad Company leased all its property to the appellee for the period of one hundred years.

By a proceeding instituted for that purpose, regular on its face, the city of Fort Wayne, by its common council, has ordered an extension of Fourth street in said city, so as to cross the yard and tracks of the appellants about two hundred and fifty feet from the south end of the yard. In this proceeding the property was treated as belonging to the city of Fort Wayne, and for this reason neither the appellee nor the railroad companies from which it derives its title were made parties to the proceeding or given any notice thereof in any manner whatever. At the point where Fourth street, if extended, will cross the appellee's yard it has six tracks used for storing cars, weighing cars, making up trains, etc., and by opening Fourth street as proposed it will prevent the weighing of cars, and will render the south end of the yard useless for the purposes for which it was constructed. On an average one hundred and forty cars are handled each day on these tracks, one-half of which belongs to the Fort Wayne, Cincinnati and Louisville Railroad Company, which

uses this yard as its northern terminus. This latter railroad company has built round-houses and repair shops on the land donated as above by and with consent and aid of the city of Fort Wayne, and it has a contract with the appellee by the terms of which it uses the tracks and depot of the latter in the transaction of its business at Fort Wayne as its southern terminus, and without the use of this yard it can not transact its business. The extension of Fourth street will greatly discommode and diminish the business of the appellee and its yard and station grounds, and impair the value of its property and franchise. By reason of the number of tracks and their necessary use in moving trains and transporting and weighing freight cars it will be dangerous to life and limb for the public to travel on said street extended across the appellee's yard as proposed. In constructing and preparing this yard and depot, there has been expended about the sum of thirteen thousand dollars, and the use of this yard and station is necessary to the appellee in conducting its business at the city of Fort Wayne.

Upon these facts the court stated as a conclusion of law that the appellee was entitled to a permanent injunction enjoining the city of Fort Wayne from extending Fourth street across its yard and tracks at the point described in the complaint.

The correctness of this conclusion, is questioned by the assignment of error upon this appeal.

It is contended by the appellant that the conclusion of law stated by the court is erroneous, for the reasons :

*First.* That the city of Fort Wayne had no power to donate or convey the land in question for the purpose of a railroad because it was purchased to be used by the people as a public park.

*Second.* Because Edgerton, who voted for the donation as a member of the common council, was, at the time of so voting, vice-president of the railroad company, and that the donation was for that reason void.

*Third.* Because the city, in its grant to the railroad company, reserved the right to cross its tracks.

The general rule is that municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation, of a private nature, unless restrained by charter or statute. 2 Dillon Municipal Corporation (3d ed.), p. 569; *Shannon* v. *O'Boyle*, 51 Ind. 565; 1 Washb. R. P. (3d ed.) 64; *Reynolds* v. *Commissioner, etc.*, 5 Ohio, 204; *Beach* v. *Haynes*, 12 Vt. 15; *Jamison* v. *Fopiana*, 43 Mo. 565; *Board, etc.,* v. *Patterson*, 56 Ill. 111; *Platter* v. *Board, etc.*, 103 Ind. 360; *Newbold* v. *Glenn*, 67 Md. 489.

Municipal corporations can not dispose of property of a public nature in violation of the trusts upon which it is held nor of a public common; but there is a distinction between property purchased for a public common and not yet dedicated, and property which is purchased for that purpose and actually dedicated to that use.

The case of *Beach* v. *Haynes, supra,* is very much in point here. In that case land had been purchased for a public common, and it was so expressed in the deed of conveyance, but before it was actually dedicated to that use it was conveyed away by the town of Westford, in which was vested the fee simple title, and it was held that such conveyance vested in the grantee a good title. But in the later case of *State* v. *Woodward*, 23 Vt. 92, it was held that a municipal corporation could not convey away a public common after it had been actually dedicated to the public use. Of course, the deed which vests title in the municipality may be of such a character as to dedicate the property to the public use, but such is not the case here. The deed to the city of Fort Wayne for the land in controversy vested in it the fee simple title without limitation or restriction as to its alienation. Such being the case, we think the city had the power to convey it for private use at any time before it was dedicated as

a public park. Such seems to be the tenor of all the authorities upon the subject.

We recognize the doctrine announced in the case of *City of Fort Wayne* v. *Rosenthal*, 75 Ind. 156, as sound, but in that case Rosenthal made a contract with himself, while here the contract was not between Edgerton and the city, but between the city and the railroad company. If that contract depended upon the vote of Edgerton, and there had been no further action taken by the city council, we would have a question quite different from the one here presented, for in this case it appears by the findings of the court that a sufficient number of councilmen voted for the resolution granting the land to the railroad company to pass it without counting the vote of Edgerton, while the deed of conveyance was executed pursuant to a resolution passed by the common council at a time when he was not a member. Treating the first resolution as voidable on account of Edgerton's connection with its adoption, we think the subsequent action of the common council fully ratified it.

The adoption of these resolutions was not a judicial act, but was legislative or ministerial. *Platter* v. *Board, etc., supra.*

We are unable to perceive how the reservation of the right to cross the tracks of the railroad company in the event the city of Fort Wayne should lay off an addition, can have a controlling influence in this case, for it does not appear that the city has laid out any addition.

The general rule is that a reservation in a deed can not be extended beyond its terms, and the right of the city to cross the railroad track is, by the terms of the reservation, limited to the time when the city shall elect to lay out an addition composed of the remainder of the land held by it under its purchase for a public park. *Nicholson* v. *Caress*, 45 Ind. 479 ; 2 Dev. Deeds, section 979 ; *Jackson* v. *Hudson*, 3 Johns. 375 (3 Am. Dec. 500).

The question as to whether the city of Fort Wayne, un-

der present legislation, possesses the power to appropriate the land described in its order for the extension of Fourth street is one of much more difficulty. That there is a broad distinction between taking a part of the right of way of a railroad company for a public street by constructing the street longitudinally, and by taking it by crossing the right of way at right angles, seems to be too plain for controversy. The right to take longitudinally is quite different from the right of crossing, and is governed by entirely different rules. All the authorities are, we believe, to the effect that a municipal corporation, in the absence of legislation expressly or by necessary implication authorizing it, can not take part of the right of way of a railroad company by the construction of a public street opened longitudinally. The decisions so holding rest upon the ground that where property is once dedicated to a public use it can not be taken for another and different public use without express authority. It is not doubted, however, that the Legislature may grant such authority. Private corporations acquire the right to construct roads subject to the dominant right of the State to cross such road whenever the public necessity demands that new roads or streets shall be opened, and for this reason it is held that the general power to construct and open streets or other public highways carries with it the power to construct them across railroad tracks. Elliott Roads and Streets, p. 169 ; *Lake Erie, etc., R. R. Co.* v. *City of Kokomo*, 130 Ind. 224 ; *State* v. *Easton, etc., R. R. Co.*, 36 N. J. L. 181 ; *Morris, etc., R. R. Co.* v. *Central R. R. Co.*, etc., 31 N. J. L. 205; *Baltimore, etc., T. P. Co.* v. *Union R. R. Co.*, etc., 35 Md. 224 ; *Little Miami, etc., R. R. Co.* v. *City of Dayton*, 23 Ohio St. 510 ; *St. Paul, etc., R. W. Co.* v. *City of Minneapolis*, 35 Minn. 141 ; *President, etc., Canal Co.* v. *Village of Whitehall*, 90 N. Y. 21 ; *Albany, etc., R. R. Co.* v. *Brownell*, 24 N. Y. 345.

While the construction of a street or other public highway across a railroad track is generally attended with some

inconvenience to the company, yet it is not ordinarily inconsistent with the use of the railroad for the purposes for which it was constructed.

But even this rule, which allows the construction of streets and other public highways across railroad tracks, has its limitations.

They can not be so constructed where by so doing the railroad would be unable to use its tracks at the point of the crossing for the purposes for which they were constructed. In other words, the crossing must occur at a point where the use of the highway or street will not deprive the railroad of the use of its tracks. Thus in the case of *Little Miami, etc., R. R. Co.* v. *City of Dayton, supra,* it was said by the Supreme Court of Ohio : " But where land is appropriated, pursuant to legislative authority, to an important public use, a subsequent grant can not be held to authorize the same land to be taken for a use wholly inconsistent with, and which, in the actual circumstances, must necessarily supersede the former use, unless such appear, by express words, or by necessary implication, to be the legislative intent."

To the same effect is *Albany, etc., R. R. Co.* v. *Brownell, supra.* In each of these cases there was an attempt to construct highways across the railroad tracks of the companies involved in the controversy.

It appears by the special findings in the case now under consideration that the extension of Fourth street across the tracks and yards of the appellee will prevent the weighing of freight at that point, and will render the south end of the yard useless for purposes for which it was constructed ; that it will greatly discommode and diminish the business, and its yard and station grounds, and impair the value of its property and franchise, and that it will be dangerous to life and limb for the public to travel over the street when so extended by reason of the number of tracks and the use to which they are necessarily put.

In view of these facts we are constrained to hold, under

the authorities cited, that under present legislation the city of Fort Wayne is not authorized to extend Fourth street in the manner contemplated. The use of such a crossing would be destructive of the use of the tracks of the appellee at this point in the manner they are now used. In such case the authority of the municipal corporation to make such a crossing must appear in some statute either expressly or by necessary implication.

Our attention has not been called to any such statute, and we know of none.

There are some other questions in the case of minor importance, but as we have reached the conclusion that the city of Fort Wayne is without power to make the crossing in dispute, they need not be noticed.

We are of the opinion that there is no error in the record for which the judgment should be reversed.

Judgment affirmed.

