## WINONA & ST. PETER RAILWAY COMPANY V. CITY OF WATERTOWN.

1.   The power of eminent domain resides in the state as an element of its sovereignty, and it belongs to the legislative department of the state to determine when it may be exercised.

2.   The exercise of that power may by the same authority be delegated to municipalities or other public agents.

3.   Property already devoted to a public use, although held by a municipality or other corporation, may be appropriated under the power of eminent domain.

4.   But in every case of claimed delegated power there is the preliminary question whether the power claimed has really been conferred, and that is a question for the courts.

5.   Mere general language granting the power to condemn, will not be taken to include the power to appropriate land already subjected to a public use, where the new use proposed will materially interfere with the former.

6.   When the trial court finds upon sufficient evidence that the laying out

and opening of a public street across the tracks and depot grounds of a railroad company would so materially interfere with the usual, proper and necessary public use of the same by the company as to be inconsistent therewith, it will be *held*, as a matter of law, that such power is not conferred by the general and ordinary authority given to the municipality to lay out and open streets and to condemn land therefor.

7.   *Held, further*, that under the evidence in this case such conclusion would not be affected by proof of the fact that the municipality had provided for the vacation of an existing street across said depot grounds, parallel with the proposed new street, and a block and a half further east.

(Syllabus by the court.   Opinion filed Nov. 24, 1893.)

Appeal from circuit court, Codington county.   Hon. J. O. ANDREWS, Judge.

Action by the Winona & St. Peter Railway Company against the city of Watertown for an injunction to restrain proceedings to condemn a strip of land across plaintiff's station yards and grounds at Watertown, for the purpose of laying out and opening a street thereon.   There was judgment for plaintiff, and defendant appeals.   Affirmed.

The facts are stated in the opinion.

*Julian Bennett, F. E. VanLiew* and *C. X. Seward*, for appellant

The exercise of the right of eminent domain is a political right.   It belongs exclusively to the legislature.   Private property can only be taken in this manner for public use.   People v. Smith, 21 N. Y. 598;   Ford v. Railway Co. 609 14 Wis.;   Cooley Const. Lim. 668;   Warren v. St. Paul, 18 Minn. 384;   Hayes v. Risher, 32 Pa. St. 169;   Smith v. Gould, 59 Wis. 631;   Railroad Co. v. Town of Lake, 71 Ill. 333;   Dillon Mun. Corp. § 465;   Swan v. Williams, 2 Mich. 437;   Mills Eminent Domain, § 11;   Challis v. Atchinson Co. 16 Kan. 117;   North Missouri, etc., v. Gott, 25 Mo. 540;   Beekman v. Railway Co., 3 Paige 45;   Varrick v. Smith, 5 Paige 160;   Elliott Roads and Streets, p. 145.

Property already devoted to public use, although held by a municipal or other corporation, may be condemned under the

power of eminent domain. 6 Am. and Eng. Enc. of Law, 533; Railroad Co. v. City of Dayton, 23 Ohio St. 510; Cincinnatti v. Commissioners, 1 Disney, 4; Bridge Co. v. R. R. Co., 17 Conn. 40; Railroad Co. v. Trustees, 3 Ind. 422; Inhabitants of Springfield v. Railroad Co., 4 Cush. 70; Giesey . v. Railroad Co., 4 Ohio St. 324; 2 Wash. Real Prop. § 11.  Property held by a corporate company and appropriated by it to public use and conveniences, stands upon the same footing with that held by an individual. The property of both is subject to condemnation for public use. West River Bridge Co. v. Battleborough, 6 How. 507; Central Bridge Co. v. Lewell, 4 Gray, 474; Armington v. Town of Barnett. 15 Vt. 745; Pierce v. Sumerworth, 10 N, H. 370; Railroad Co. v. Williams, 54 Penn. St. 103; Boston Water Power Co. v. Railroad Co., 23 Pick. 360.

Where a constitutional provision or a legislative enactment provide otherwise, the exclusive power of the legislature to determine the necessity, expediency and extent of the exercise of the power of eminent domain is taken away.  In the exercise of the right of eminent domain the state or municipality acting under its authority, is exercising a sovereign political right with which the court has no authority to interfere.  Beekman v. Ry. Co. 22 Am. Dec. 679; Goff v. Nolan, 62 How. Pr. 323. The legislature or municipality acting under its authority is the sole judge of the public necessity which requires the exercise of eminent domain.  Fairchild v. City of St. Paul, 49 N. W. Rep. 325.

A city that by its charter is given the power to lay out and extend streets, has the right to locate streets across the grounds owned and occupied by railroad corporations.  Railroad Co. v. City of Dayton, 23 Ohio St. 510; Elliott Roads and Streets, 169.

*Lynch & Sterling, Glass & Van Buskirk* and *Wilson & Bowers,* for respondent.

The grant to a city in general terms of the power to condemn, does not confer power to condemn property already devoted to another public use with which the new use would ma-

terially interfere.   Railroad v. City of Faribault, 23 Minn. 167; St. Paul Union Depot v. City of St. Paul, 30 Minn. 359; Railroad Co. v. Smith, 53 N. Y. 574; Railroad v. Brownell, 24 N. Y. 345; Matter of City of Buffalo, 68 N. Y. 167; Matter of Boston, etc., Ry. Co., 79 N. Y. 64; Railroad v. Williamson, 91 N. Y. 552; Railroad v. Long Branch Com'rs, 39 N. J. Law 28; State v. Railroad, 35 N. J. Law, 325; City of Valparaiso v. Railroad, 24 N. E. Rep. 249; Railroad v. North, 3 N. E. Rep. 144; City of Seymour v. Railroad, 26 N. E. Rep. 188; Evergreen Ceme·tery Ass. v. City of New Haven, 43 Conn. 234; Railroad v. Railroad, 118 Mass. 391; Pittsburg Junction Ry. Co.'s Appeal, 28 Am. and Eng. Ry. Cases, 266; Railroad v. Railroad, 124 Mass. 368; Mills on Eminent Domain, § 46; Lewis on Eminent Domain, §§ 266, 276, 643; Pocantoco Water Works Co. v. Bird, 130 N. Y. 249; Railway Co. v. Minneapolis, 35 Minn. 141; Railway Co. v. Williamson, 91 N. Y. 552; Railway Co. v. Brownell, 24 N. Y. 345.

KELLAM, J.   This was an action brought by respondent to restrain proceedings by appellant to condemn a strip of land 100 feet in width across respondent's station yards and grounds at Watertown, for the purpose of laying out and opening a street thereon.   The complaint sets out at length and in detail the ownership by the plaintiff of the lands proposed to be appropriated by the defendant city; their constant and continued use for more than five years by plaintiff as an undisputed and necessary part of their depot grounds, whereon are situated plaintiff's depot, switch and side tracks, station and freight houses, turntables, water tank, roundhouse, platforms, and other appendages and appurtenances to their railroad, and that the taking and use and occupation of said strip of land by the city for the purposes of a public street would be wholly inconsistent with the use of their said lands for railroad purposes, and would necessitate an abandonment thereof by said plaintiff for such purposes; and that the exclusive use and occupation

of said lands, including that proposed to be taken by defendant as a public street, are, and always will be, necessary to the proper prosecution and transaction of plaintiff's railroad business according to law and the reasonable demands of the public. The answer denied that the taking and use of said strip of land as a street as proposed by defendant would interfere in any manner or be inconsistent with the use of said plaintiff's lands for railroad purposes, and further denied that the same were then, or ever had been, necessarily devoted by plaintiff to public use, or the uses of its said railroad, or that their exclusive occupation and control by said plaintiff is, or ever will be, necessary to the proper prosecution of its said railroad business. Upon a trial by the court, judgment was rendered in favor of the plaintiff, permanently restraining the defendant city from condemning and appropriating the land described for the use of a public street, and from this judgment the defendant appeals.

Upon the trial the defendant objected to the introduction of any evidence, on the ground that the complaint does not state facts sufficient to constitute a cause of action, and upon the further ground that the right of the city to lay a street across the railroad tracks in question is a political right, and one which no court has any authority or jurisdiction over. At the close of the evidence defendant renewed its objection by motion to dismiss the action upon grounds stated, as follows: First, the complaint does not state facts sufficient to constitute a cause of action; second, because this court has no right or authority or jurisdiction over the matter involved herein, or the matters at issue by the pleadings herein; third, because the question of necessity for opening of Oak street (the strip of land in question) is not a question which can properly come before this court, the testimony having shown that the city council of the city of Watertown, to whom authority was given by the legislature of the Territory of Dakota, passed upon the question of the necessity for the opening of Oak street;

and upon the further ground that the testimony is insufficient to support the allegations contained in the plaintiff's complaint.

The grounds of the first objection are nowhere more particularly stated, and it is believed from the briefs and arguments on both sides that the position of defendant and appellant is indicated by the more specific statements of the second and third grounds; that is, that in the exercise of the right of eminent domain the state or the municipality acting under its authority is exercising a sovereign political right under the direction of the legislative department of the government, and with which the court has no authority to interfere. That the power of eminent domain resides in the state as an element of its sovereignty, and that it belongs to the legislative department of the state to determine when it may be exercised, are elementary propositions outside the domain of discussion. It is equally well settled that the exercise of this power may be delegated by the state, through its legislature, to municipalities, or other public agents. 6 Amer. & Eng. Enc. Law, p. 517 *et seq.*, and many cases there cited. It is also established beyond question that property already devoted to public use, although held by a municipal or other corporation, may be condemned under the power of eminent domain. Id. p. 533. These propositions are accepted and treated by both sides as settled law. There is still left, however, in every case of claimed delegated power, not the question of the expediency of its exercise, for that is legislative, but the preliminary question whether the power claimed has really been conferred; and that is a judicial question. It is really, in such case, a question of statutory construction. It is shown that the legislature in general terms authorized the appellant city to locate, open, extend streets, and to appropriate private property for the use of the city by condemnation. But if the new use for which the city proposes to appropriate any such property will destroy or materially interfere with another beneficial public use, to which it has already been devoted, and for which purpose it is being

used, it becomes a question for the courts to determine whether the particular power thus proposed to be exercised was conferred by such grant in general terms. It was so ruled *In re* City of Buffalo, 64 N. Y. 547. The same doctrine was applied in Railroad Co. v. Fairibault, 23 Minn. 167, where the court, while disclaiming authority to review the question of expediency, determined as a matter of judicial construction that a general grant of power to the city of Fairibault to appropriate lands for a public street did not confer such authority, where its exercise would work the destruction or compel the abandonment of other public use, to which the lands were already appropriated; and that it would be against reason to suppose that the legislature so intended by the general and ordinary grant of authority to open streets and appropriate land therefor. In Railroad Co. v. North, 103 Ind. 486, 3 N. E. 144, the court announced the same doctrine in the following language: "A legislative intent to subject lands devoted to a public use, already in exercise, to one which might thereafter arise, will not be implied from a grant of power made in general terms,   *   *   * without special reference to an existing necessity for the subsequent use, where  *  *  it appears that both uses cannot stand together, and the latter, if exercised, must greatly endanger, if it do not destroy, the exercise of the former use." See, also, Mills, Em. Dom. Sec. 45, *et seq.*; Pierce, R. R. 156; *In re* City of Buffalo, 68 N. Y. 167; Railroad Co. v. Williamson, 91 N. Y. 552; ; City of Valparaiso v. Railway Co., (Ind Sup.) 24 N. E. 249. The principle of construction almost universally applied by the courts in such cases is that mere general language granting the power to condemn is not to be taken as including the power to appropriate land already subjected to another public use, particularly where the subsequent use will interfere with the former. Power to do that can be granted only by express language, covering the particular case, or by necessary implication; and such necessary implication will not ordinarily exist where the general power can be beneficially ex-

ercised without taking the particular land in question, or where the two public uses are necessarily inconsistent. This doctrine was involved and recognized in several of the cases last above cited, but it was especially declared *In re* Boston & A. R. Co., 53 N. Y. 574; St. Paul Union Depot Co. v. City of St. Paul, 30 Minn. 359, 15 N. W. 684; Housatonic R. Co. v. Lee & H. R. Co., 118 Mass. 391. As already stated, the rule is the result of statutory construction in the efforts by the courts to ascertain the true intent of the legislature in thus conferring the general power of appropriation upon municipal or other agencies. It is an obvious necessity that public streets and highways should cross railroad tracks. Such use for crossing does not, under ordinary circumstances, so interfere with the former use as to be inconsistent with it; and so it is uniformly held that the right to make such crossing may be exercised under a general grant of power, because, the two uses not seriously interfering with each other, it will be presumed that the legislature intended by the general grant to confer such power. But when the conditions are such that it is apparent the two uses could not beneficially coexist, and that one would largely defeat the other, the presumption as to the intention of the legislature is the other way. Applying this conclusion to the question immediately before us, we think the trial court was right in overruling defendant's objection to evidence on account of the insufficiency of the complaint, and in denying the motion to dismiss on the grounds stated.

This leaves only the question of the insufficiency of the evidence to put the case within the rule announced, that is, does it sufficiently appear from the evidence that the new use to which the city proposed to appropriate this land would defeat or materially interfere with the prior public use to which it was already devoted by the railroad company? The strip of land sought to be condemned is 100 feet in width, and extends entirely across the depot grounds and yard of the plaintiff company, from north to south. The trial court found that that

part of the yard traversed by the strip in question is, and has been for more than five years, used by said company as a necessary part of its depot grounds and yards; that upon and across said strip are located numerous tracts, including a main track, a passing track, a track for the placing and standing of cars for loading directly from and unloading directly into teams and vehicles, a track for the storage of cars, both loaded and empty, and including cars waiting to be made up into trains, or to be taken into trains about to arrive or depart from said city; that these several tracks and the ground between the same are constantly and necessarily used for important and indispensable purposes in the conduct of their business at said station; that fully two-thirds of the switching at said station is necessarily done at the west end of said yard, and over this strip so proposed to be taken; and it is expressly found that the appropriation of said strip to the city for street purposes would materially interfere with the beneficial use of said tracks for switching, and would wholly prevent the ordinary and convenient use of both the "team" and "elevator" tracks.  The findings are very specific that in other respects the use of said strip would be inconsistent with and materially impair the beneficial use of said depot ground and yard for purposes legitimate, important and necessary to said railroad company in the due, safe and proper prosecution of their business at said station.  It is sufficient, however, to say without more particular reference that the findings of fact are ample to justify the legal conclusion that the new use proposed by the city would so materially impair and interfere with the former public use to which the land in question was already devoted as to bring the case within the rule heretofore announced, denying the power of the city to appropriate such property under the general and ordinary authority to lay out streets, and to condemn land therefor.  It is true that, in its printed abstract, appellant assigns as error the insufficiency of the evidence to support the findings of fact made by the court; but such objection is not directed against any

particular finding, although such findings are severally upon different questions of fact, and are separately stated and numbered; nor is such assignment on the question of the sufficiency of the evidence in any manner argued by counsel. We have, however, carefully read the evidence, and are satisfied that we should not be justified in materially modifying the findings.

One other assignment of error, though only incidentally noticed in the appellant's argument, ought perhaps to be considered. On the trial the defendant offered in evidence a resolution passed by the city counsel for the vacation of Cherry street (which is a street 70 feet in width, crossing defendant's depot ground, a block and a half east of the strip in question, and running parallel therewith) as soon as the extension of Oak street (over the strip in controversy) should be perfected, completed and in a condition fit for public travel. This evidence was offered, as stated by defendant's counsel, for the purpose of showing that the opening and extension ot Oak street would not increase the danger to the public traveling upon it, or to the public in crossing from one side of the tracks to the other; and also for the purpose of showing good faith upon the part of the city in the matter of opening Oak street. The exclusion of this evidence is assigned as error. Conceding that this evidence would have answered the purpose for which it was offered, it could not have changed the character and effect of the other evidence as to the constant ard necessary use of the west end of the yard and the tracts thereon. The increased danger to the public from opening the new street was only one of many objections, and, that entirely removed, would still leave unaffected the question of the convenience of the company in conducting its business in a yard laid out and upon tracks located with reference to streets existing when the yard was so laid out. Besides, if "fully two-thirds" of the switching was necessarily done near the west end of the yard, and over the strip in question, we are unable to see why the danger to the public would not be increased by the locating of a street at that

point, instead of further east, where less switching was done. Upon a careful study of the record, and of the legal questions involved, we think the judgment of the circuit court should be affirmed, and it is so ordered, all the judges concurring.