VILLAGE OF ASHLEY, in McIntosh County, North Dakota, v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, a Corporation.

(163 N. W. 727.)

**Villages — boards of trustees — powers of — streets — railroads — right of way — across — ordinances.**

1. Under subdivision 9 of § 3861 of the Compiled Laws of 1913, which confers upon boards of trustees of villages the power to lay out, open, grade, and otherwise improve streets, such board is authorized to pass an ordinance extending a village street across a railroad right of way.

**City councils — legislative — powers conferred by — condemnation — railroads — right of way — laying out street across — villages — boards of trustees — same powers.**

2. From the fact that the legislature has conferred upon city councils by express provision (Comp. Laws 1913, § 3599, subd. 68) authority to lay out and extend streets, by condemnation or otherwise, across the rights of way

---

Note.—On power to lay out street or highway across railway property or right of way, see note in 24 L.R.A. (N.S.) 1213, from which it appears, in accord with the cause above, that the general power to lay out, extend, and open streets, when authority to condemn property is also conferred, will permit the opening of a street across such a right of way.

Generally, on taking railroad lands for municipal purposes, see note in 2 L.R.A. (N.S.) 227.

On the right to take railroad property for street use, see note in 47 Am. St. Rep. 290.

of railroad companies, it is not to be assumed that it was intended to with-
hold from boards of trustees of villages the power to proceed by condemnation
under §§ 8203 and 3985, Comp. Laws 1913, for the accomplishment of similar
purposes.

**Railroad tracks — public streets crossing — necessity for — municipalities —
— may extend streets across railroad tracks — general powers.**

3. Owing to the obvious necessity that public streets and highways should
cross railroad tracks, municipalities may proceed to extend streets under a
general power of appropriation.

**Board of Railroad Commissioners — regulatory powers — village trustees —
powers of — independent of Board of Railroad Commissioners.**

4. The regulatory power conferred upon the Board of Railroad Commissioners
is not inconsistent with and does not detract from the power given to boards of
village trustees to extend streets across railroad rights of way.

**Villages — streets of — extension of — necessity for — ordinance — competent
proof of — legislative powers.**

5. The question of the necessity for the extension of a street is legislative,
rather than judicial, and its termination is vested with local municipal legis-
lative bodies, and a village ordinance is competent proof of such necessity.

**Village ordinances — passage of — formalities — governing body — will of —
shall express.**

6. Where the legislature has not required the observance of any formality in
passage of village ordinances, it is sufficient that an ordinance shall be proved
to be the will of the governing body.

Opinion filed June 7, 1917.

Appeal from District Court, McIntosh County, *F. P. Allen*, J.
Defendant appeals.
Affirmed.

*Lee Combs & L. S. B. Ritchie* and *John L. Erdall*, for appellant.

Villages in this state have no power to declare the necessity for the
opening up or laying out of a street across an established railroad
right of way. The statutes and the Constitution vest such jurisdiction
in the Board of Railroad Commissioners, and when such board has
heard and passed upon a petition therefor by the village, and refused
same, and no appeal has been taken, the matter is closed. Comp. Laws,
1913, § 589; Beasley v. Texas & P. R. Co. 191 U. S. 492, 48 L. ed.
274, 24 Sup. Ct. Rep. 164; Jacquelin v. Erie R. Co. 69 N. J. Eq.
432, 61 Atl. 18; Horton v. Southern R. Co. 173 Ala. 231, 55 So. 531,

Ann. Cas. 1914A, 685; Grafton v. St. Paul, M. & M. R. Co. 16 N. D. 314, 22 L.R.A.(N.S.) 1, 113 N. W. 598, 15 Ann. Cas. 10; Winona & St. P. R. Co. v. Watertown, 4 S. D. 323, 56 N. W. 1077.

In villages aye and nay votes must be taken upon the passage of ordinances, and a journal record kept of the vote of each member of the board of trustees in each case. To declare by motion that they intend to pass such an ordinance is not sufficient. Pickton v. Fargo, 10 N. D. 469, 88 N. W. 90; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; Milbank v. Western Surety Co. 21 S. D. 261, 111 N. W. 561.

A village, in order to condemn property under the power of eminent domain, must proceed in court just the same as any other, aside from a city. Grafton v. St. Paul, M. & M. R. Co. 16 N. D. 314, 22 L.R.A. (N.S.) 1, 113 N. W. 598, 15 Ann. Cas. 10, and cases cited; 15 Cyc. 629–631.

The right to take property from one citizen and transfer it to another is conferred only when some existing public need is to be supplied or some public advantage is to be gained. Edgewood R. Co's Appeal, 79 Pa. 257, 5 Mor. Min. Rep. 406; 15 Cyc. 579, 580, 581, 586, 612–614; Lewis's Sutherland, Stat. Constr. 2d ed. 560; Mills, Em. Dom. 45–47; 1 Lewis, Em. Dom. 2d ed. 266, 269, 276.

The general power given to municipalities by legislative enactment to open new streets or change, widen, or extend old ones does not authorize them to appropriate for such purposes land already in use by a railroad company, when such use or appropriation would defeat or supersede the rights of the company. Pittsburgh, Ft. W. & C. R. Co. v. Sanitary Dist. 218 Ill. 286, 2 L.R.A.(N.S.) 227, 75 N. E. 892; Augusta v. Georgia R. & Bkg. Co. 98 Ga. 161, 26 S. E. 499; Winona & St. P. R. Co. v. Watertown, 4 S. D. 323, 56 N. W. 1077; St. Paul Union Depot Co. v. St. Paul, 30 Minn. 359, 15 N. W. 684; Richmond, F. & P. R. Co. v. Johnston, 103 Va. 456, 49 S. E. 496; Ft. Wayne v. Lake Shore & M. S. R. Co. 132 Ind. 558, 18 L.R.A. 367, 32 Am. St. Rep. 277, 32 N. E. 215; Cincinnati, W. & M. R. Co. v. Anderson, 139 Ind. 490, 47 Am. St. Rep. 285, 38 N. E. 167; Hannibal v. Hannibal & St. J. R. Co. 49 Mo. 480; Bridgeport v. New York & N. H. R. Co. 36 Conn. 255, 4 Am. Rep. 63; New Jersey Southern R. Co. v. Long Branch, 39 N. J. L. 28.

*Hugo P. Remington,* for respondent.

The regulatory power conferred upon the Board of Railway Commissioners is not inconsistent with, and does not detract from, the power given to boards of village trustees to extend streets across railroad rights of way. The duties of the Commission are supervisory as to railroads, and no power is given them as to the building and maintenance of highways or crossings over railroads. The Commission has no jurisdiction over the subject-matter here involved. Comp. Laws 1913, § 589; Minneapolis, St. P. & S. Ste. M. R. Co. v. Stutsman, 31 N. D. 597, 154 N. W. 654; Code of Civ. Proc. chap. 36.

The defense of *res judicata* must be pleaded if relied upon. 23 Cyc. 1523 et seq., XXI A, 1–5 and cases cited.

It is the law that when there is no constitutional or statutory provision as to the mode of procedure in passing ordinances by villages, then the municipal body may prescribe its own rules or pursue its own methods. Swift v. People, 162 Ill. 534, 33 L.R.A. 470, 44 N. E. 528; Swindell v. State, 143 Ind. 153, 35 L.R.A. 50, 42 N. E. 528; McGavock v. Omaha, 40 Neb. 64, 58 N. W. 543.

In passing ordinances, any form of words signifying clearly the will of the governing body will be sufficient. 28 Cyc. 352.

It is discretionary with the village board of trustees, and it is within their power, to declare upon the necessity of opening or extending a street within the corporate limits, and their action is conclusive. Minneapolis, St. P. & S. Ste. M. R. Co. v. Stutsman, 31 N. D. 601, 154 N. W. 654; Grafton v. St. Paul, M. & M. R. Co. 16 N. D. 314, 22 L.R.A.(N.S.) 1, 113 N. W. 598, 15 Ann. Cas. 10.

Land once subjected to a public use may be condemned and taken for another public use. There are only the questions of necessity and damages involved. Grafton v. St. Paul, M. & M. R. Co. supra; Minneapolis, St. P. & S. Ste. M. R. Co. v. Stutsman, 31 N. D. 597, 154 N. W. 654; Winona & St. P. R. Co. v. Watertown, 4 S. D. 323, 56 S. D. 1077; Pittsburgh, Ft. W. & C. R. Co. v. Sanitary Dist. 218 Ill. 288, 2 L.R.A.(N.S.) 227, 75 N. E. 892.

The terms "public necessity" and "public convenience" are synonymous when used in this relation. 8 Words & Phrases, 3781; Hunter v. Newport, 5 R. I. 325; Oury v. Goodwin, 3 Ariz. 255, 26 Pac. 376; Detroit v. Beecher, 75 Mich. 454, 4 L.R.A. 813, 42 N. W. 986; Minne-

apolis, St. P. & S. Ste. M. R. Co. v. Stutsman, 31 N. D. 597, 154 N. W. 654.

BIRDZELL, J.   This action was brought by the village of Ashley, as plaintiff, to condemn for use as a street the property of the defendant railroad company.   The village ordinance, which purports to open the street, declares a necessity for the extension of Minnesota street in said village, upon and over the right of way of the defendant company for the whole of the width of said street, or 66 feet.   It then proceeds to extend the street across the right of way.   The defendant answered, objecting to the extension of the street across its right of way, on the grounds that it had already established and was maintaining sufficient crossings over its railroad line in the plaintiff village for the accommodation of the public; that there was no necessity for the additional crossing provided for in the ordinance; and that the establishment of the contemplated crossing would hinder the defendant in the performance of its duties as a common carrier, and would subject the public to increased expense and danger in its relations with the defendant. The trial court found adversely to the defendants on the issue raised, and a judgment was entered, granting the relief prayed for and holding that the defendant was entitled to nominal damages.   Upon this appeal from the judgment of the trial court the appellant relies for reversal on three main propositions: First, that the court was without jurisdiction to render the judgment because (a) the questions involved were within the exclusive jurisdiction of the Board of Railroad Commissioners, and (b) because the land was already dedicated to a higher public use.   Second, that there is no competent proof of necessity for the extension of the street.   Third, which is in reality a corollary of the second proposition, that there was and still is ample crossing facilities in the plaintiff village for the accommodation of the public.

In support of the first proposition advanced, the appellant relies upon the provisions of the statute which vest in the Railroad Commission general supervision over all railroads, and which define the powers of the Commission with respect to the care, control, and use of station grounds.   Without quoting at length from the statutes cited, we shall merely state the substance of the provisions germane to the questions involved and which are deemed pertinent by appellant's counsel.   Sec-

tion 589 of the Compiled Laws of 1913 vests in the Commissioners of
Railroads general supervision of common carriers, and requires exam-
ination and inspection of railroads "with reference to the public safety
and convenience." Article 21 of chapter 14 of the Civil Code contains
the statutory provisions giving the Commission power "to regulate
common carriers" and defining the duties of the Commissioners of
Railroads.

We find nothing in the statutes vesting regulatory power in the
Railroad Commission that in any way qualifies the authority vested in
public corporations to extend and lay out streets and highways across
the rights of way of railroad companies. The jurisdiction over streets,
and the authority to lay out and extend the same, is, in this state,
very clearly and properly vested by the legislature in the local municipal
bodies. Subdivisions 7 and 68 of § 3599 of the Compiled Laws of 1913
expressly grant to city councils the power to lay out and extend streets
across the rights of way of railroad companies. Subdivision 9 of §
3861 confers power upon boards of trustees of villages to lay out, open,
grade, and otherwise improve streets, but there is no statute which,
in express language, purports to authorize boards of trustees of villages
to extend streets across the rights of way of railroad companies, as
is the case with city councils under subdivision 68 of § 3599. From
these differences in the statutes the appellant argues that the corporate
authorities of villages cannot exercise the power sought to be exercised
in the case at bar, but we are of the opinion that this argument is
not tenable. The village charter statute conveys in general terms the
authority to do what has been attempted in this case. Section 8203
of the chapter devoted to "eminent domain" extends the exercise of
the right of eminent domain to villages for the purpose of acquiring
property for use as a street, and § 3985 expressly authorizes villages
to proceed under the eminent domain statute whenever such proceed-
ings become necessary in connection with the exercise of the power to
lay out or open streets. While it is true that these statutes nowhere
specifically treat of the procedure that shall be followed where the
exercise of the power to open a street will involve the crossing of the
right of way of a railroad company, we cannot see that any particular
significance attaches to such omission. It was no doubt assumed by the
legislature that, in condemning a right of way for a public street across

the property of a railroad company, such proceeding would be controlled by the principles applicable to the taking of the property of individuals, with due regard, however, for the public use to which the right of way is already subject. Comp. Laws 1913, § 8206. In this connection it is significant that the section which expressly confers upon city councils the authority to extend streets across the right of way of railroad companies authorizes the extension by condemnation or *otherwise.*

The inclusion of such express subdivision in the city charter statute is consistent with a desire on the part of the legislature to vest an added authority in city councils, to proceed either by condemnation or in some other manner, and the omission of a similar subdivision in village charters does not evince a desire to withhold all authority from village trustees to exercise the ordinary power to condemn. This is especially true in view of general statutes applicable both to cities and villages. From these considerations it is apparent that the district court was not without authority to render a judgment in the condemnation proceedings brought by the village of Ashley, either because of the jurisdiction of the Board of Railroad Commissioners or because the land sought to be condemned was already dedicated to another public use. If, however, it should appear that the public use to which the land is already dedicated is a higher public use than that to which it would be subject as a street of the vollage of Ashley, and if its use as a street is incompatible with such higher use, the street cannot, with propriety, be extended.

Appellant's counsel have cited much authority substantiating the proposition that, where property has once been condemned for railroad purposes, it cannot be condemned for another public use which will totally destroy or materially impair its use for railroad purposes, except where the legislature has clearly manifested an intention to authorize such condemnation (Lewis's Sutherland Stat. Constr. 2d ed. 560; 1 Lewis, Em. Dom. 2d ed. 266, 269, 276; 15 Cyc. 612, 614), and also that the general power to open streets does not authorize a municipality to appropriate land already in use by a railroad company when such appropriation would defeat or supersede the rights of the company, citing Pittsburgh, Ft. W. & C. R. Co. v. Sanitary Dist. 218 Ill. 286, 2 L.R.A.(N.S.) 227, 75 N. E. 892; Augusta v. Georgia R. & Bkg. Co. 98 Ga. 161, 26 S. E. 499; Winona & St. P. R. Co. v. Watertown, 4

S. D. 323, 56 N. W. 1077; St. Paul Union Depot Co. v. St. Paul, 30 Minn. 359, 15 N. W. 684; Richmond, F. & P. R. Co. v. Johnston, 103 Va. 456, 49 S. E. 496; Ft. Wayne v. Lake Shore & M. S. R. Co. 132 Ind. 558, 18 L.R.A. 367, 32 Am. St. Rep. 277, 32 N. E. 215; Cincinnati, W. & M. R. Co. v. Anderson, 139 Ind. 490, 47 Am. St. Rep. 285, 38 N. E. 167; Hannibal v. Hannibal & St. J. R. Co. 49 Mo. 480; Bridgeport v. New York & N. H. R. Co. 36 Conn. 255, 4 Am. Rep. 63; New Jersey Southern R. Co. v. Long Branch, 39 N. J. L. 28.

We do not question that this is a correct statement of the law, but it is quite apparent that there may be a condemnation within the limitation of the doctrine as stated. The law does not altogether negative the exercise of the power of eminent domain under a general power; it only precludes its exercise where the appropriation would defeat or supersede the prior use. This limitation is well stated in the case of Winona & St. P. R. Co. v. Watertown, 4 S. D. 323, 56 N. W. 1077, which is cited and much relied upon by appellant's counsel. The question is first resolved to one of statutory construction. In speaking of the principle that should control where statutes are passed conferring general powers of appropriation that might be exercised where the property is already devoted to some public use, which would in a measure be considered inconsistent, the court said: "As already stated, the rule is the result of statutory construction in the efforts by the courts to ascertain the true intent of the legislature in thus conferring the general power of appropriation upon municipal or other agencies. It is an obvious necessity that public streets and highways should cross railroad tracks. Such use for crossing does not, under ordinary circumstances, so interfere with the former use as to be inconsistent with it; and so it is uniformly held that the right to make such crossing may be exercised under a general grant of power, because the two uses not seriously interfering with each other, it will be presumed that the legislature intended by the general grant to confer such power. But when the conditions are such that it is apparent the two uses could not beneficially coexist, and that one would largely defeat the other, the presumption as to the intention of the legislature is the other way."

If the public use to which property is subjected is threatened with material impairment by the contemplated use, then and then only does the new use become inconsistent, but the use of a part of the railroad

right of way for a public street does not, under ordinary and proper conditions, threaten the impairment of another public use. A situation might readily be conceived where the condemnation of railroad property for a public street would impair its use for railroad purposes. In the case of St. Paul Union Depot Co. v. St. Paul, 30 Minn. 359, 15 N. W. 684, for instance, there was an attempt to condemn for street purposes a strip of land 19 feet in width, which was used continually by vehicles conveying baggage to and from the depot. To have condemned the land for use as a street would necessarily have impaired its use as a part of the depot grounds. It was upon this principle that the decision in the case of Winona & St. P. R. Co. v. Watertown, supra, was based. See also Chicago G. W. R. Co. v. Mason City, 155 Iowa, 99, 135 N. W. 9; Alvord v. Great Northern R. Co. — Iowa, —, 161 N. W. 467.

It is next contended that there is no competent proof of necessity for the extension of the street. This is a legislative question rather than a judicial one, and the power has been vested by the legislature in village boards of trustees. This question has been fully considered and decided in the case of Grafton v. St. Paul, M. & M. R. Co. 16 N. D. 313, 22 L.R.A.(N.S.) 1, 113 N. W. 598, 15 Ann. Cas. 10, which case differs from this only in that in the Grafton Case the power was exercised by a city council, whereas here it was exercised by a board of trustees of a village. There is, however, as pointed out above, no material difference in this respect between the statutes which convey power to open streets upon the two classes of officials. See also Lewis on Eminent Domain, 3d ed. 370.

The necessity for the extension of the street in question having been determined by the proper authorities of the plaintiff village, we are not disposed to review such determination. If we were so disposed, there could be little doubt that the testimony and the exhibits are such as to amply warrant the findings of the trial court, who viewed the premises, that there was a necessity. It appears that the approach to the depot is over Main street and Second street. Main street is one block south of Minnesota street, the street in question, and is intersected by Second street directly south of the depot. A large part of Second street is within the right of way of a branch line, the tracks of which project into the street. It also appears that the approach from

Main street to the depot is over low ground between the main railroad track and the branch line, and that, owing to the low ground, the road from Main street to the depot is frequently not in a condition to be conveniently traveled.

Appellant's counsel also argue that the ordinance is not competent evidence of necessity because of the manner in which it was passed. It appears that the meeting was attended by the three members of the village board; that the ordinance was read, one member moved its passage, another seconded the motion; that the question was put by the chairman, and that two members voted for the passage of the ordinance, the chairman not voting; that the ordinance was declared passed and was published. Section 3592, Compiled Laws of 1913, which requires the taking of an aye and nay vote, is a part of the city charter, and is only applicable to cities. There is no statute requiring any particular formality in the passage of ordinances by village boards, and, in the absence of any other requirement, no particular formality need be observed. In the absence of other requirements, it is only necessary that there be sufficient proof of the will of the governing body. 28 Cyc. 352.

The judgment of the District Court is affirmed.

Robinson, J. I concur in result.