75 So.2d 765 (1954)
CITY OF CLEARWATER, a municipal corporation, Herbert M. Brown, Guy L. Kennedy, Jack Russell, W.E. Strang, Jr., and John W. Bates, as Mayor-Commissioner and Commissioners, respectively, of the City of Clearwater, and F.G. Nelson, Appellants,
v.
L.S. CALDWELL and Charles A. Kerekes, Appellees.
Supreme Court of Florida. En Banc.
September 28, 1954.
Rehearing Denied November 11, 1954.
H.H. Baskin, Sr., H.H. Baskin, Jr., George W. Smith, Clearwater, Mabry, Reaves, Carlton, Fields & Ward, Tampa, Charles M. Phillips, Jr., Clearwater, for appellants.
*766 Carroll R. Runyon, Bussey & Simmons, St. Petersburg, for appellees.
MATHEWS, Justice.
This case involves the right or power of the City of Clearwater to lease for fifty years, for profit or as an investment for the City, to a private individual for private gain or profit to him, a portion of land acquired by it in 1912 under its general power to acquire property for municipal purposes.
Taxpayers brought suit against the City of Clearwater and the private individual to whom the property is to be leased, seeking to enjoin the consummation of the deal. Answers were filed and thereafter hearing was had before the Chancellor on bill and answer. The Chancellor entered the final decree, accompanied by an opinion, granting the relief sought by the taxpayers. The City and the private individual to whom the property was to be leased for hotel purposes appealed from that final decree.
We do not find that the City of Clearwater has been granted the authority by the Legislature, directly or indirectly, to construct and operate a hotel or apartments, or that the same has been declared by the Legislature to be for a municipal purpose.
In Florida the Legislature has plenary control over municipalities subject to such restrictions as may be found in the State or United States Constitutions, but if a doubt exists as to whether a statute authorizes a municipality to exercise a certain power, then that doubt should, as a matter of law, be resolved by the courts against the municipality. City of Daytona Beach v. Dygert, 146 Fla. 352, 1 So.2d 170, 173, 133 A.L.R. 1237, and cases cited therein. It is also firmly established in this State that a municipality can exercise powers only "which are expressly granted or which by fair and reasonable intendment are conferred or granted, and if the power to lease or rent" a piece of property "on the part of the municipality is not fully and clearly granted by legislative enactment, then the said power or authority is withheld and the lease is void for the want of power on the part of the municipality to enter into the said lease." City of Daytona Beach v. Dygert, supra.
Appellants contend that the City of Clearwater has the power to lease its lands for hotel and apartment house purposes for a private gain because it will serve a municipal purpose, but the Legislature has not so declared, or granted, any such power. It may be argued that it is desirable for the City of Clearwater to be granted the power by the Legislature to enter into the real estate business and lease its property for hotels, drug stores, department stores, grocery stores, clothing stores, shoe stores and other such enterprises, but the Legislature has not attempted any such delegation of power. Such a change in policy may well threaten the entire free enterprise system. If such a change in policy can be brought about in this case, with reference to hotels, by judicial decree or opinion, why not extend the policy to all private business. Why not extend it to all municipalities and counties, with reference to manufacturing plants, and every other enterprise now existing under the free enterprise system, and even to "collective farms" under the system of Communism?
It would be a revolutionary change in municipal government for the Legislature to attempt to delegate any such power. Such a question is one of tremendous public importance and involves a change in policy. The Courts have no authority to change the policy with reference to municipal government as it has existed heretofore and adopt any such revolutionary policy. Such a change in policy can only be brought about by legislative action in some cases or by action of the people in approving such change by the adoption of a constitutional amendment, in others. The power of the Legislature under Section 8, Article VIII, of the State Constitution, F.S.A., to grant the authority to a municipality to lease its lands for a period of fifty years to private individuals for the purpose of operating a hotel for gain or profit is not presented on this appeal and we do not, therefore, pass upon such question.
*767 Municipal government exists primarily for the performance of municipal or governmental functions, for the happiness, convenience, health and general welfare of the inhabitants of a local community. The powers fall into two classes. One power is purely governmental and in such cases, authority must be for a municipal purpose. The other power is granted to the municipality in a proprietary capacity, but even there the power must be for a public purpose.
In State v. Town of North Miami, Fla., 59 So.2d 779, the Town had worked out a plan to acquire property and erect thereon an aluminum manufacturing plant which it would lease to a private corporation under terms and conditions not necessary to detail here. The Town had no special grant of power from the Legislature with reference to such matter, nor special, nor extraordinary, powers, but only such powers as are enumerated in F.S. Chapter 165, F.S.A., and particularly, F.S. Section 165.08, F.S.A., "to take and to hold property * * * and to control and dispose of the same for the benefit and best interest of the corporation * * * and to do all such other acts and things as are incident to corporate bodies." We held in that case that the purpose set forth in the plan for acquiring the property and building the manufacturing plant did not serve a public or municipal purpose, and also, that it violated Section 10 of Article IX of the F.S.A. Constitution which provided that the Legislature should not authorize any city to obtain or appropriate money for, or to loan its credit to, any corporation.
In the later case of Adams v. Housing Authority of City of Daytona Beach, Fla., 60 So.2d 663, we had under consideration Chapter 23077, Acts of 1945, which attempted to specifically extend the power of housing authorities so as to authorize them to acquire by voluntary purchase, or by eminent domain, real estate in blighted areas for development purposes and to make it available to private enterprise for commercial and industrial uses.
The Housing Authority had developed an ambitious plan to acquire several acres of land in a blighted area. The plan involved the tearing down of old houses, repaving streets and dividing the property into retail, wholesale and industrial property. The prospectus stated that it would be "offered for sale through extensive advertising". We held that the plan involved was a real estate promotion for private commercial and industrial purposes and if municipalities could be vested with any such power or authority they could take over the entire field of private enterprise without limit so long as they could find a blighted area containing sufficient real estate. In that case it was insisted that the incidental benefits accruing to the public from the establishment of the contemplated enterprise would cause the establishments to serve a public purpose. In the opinion we quoted from the article on Eminent Domain, 18 Am.Jur., Sec. 45, p. 675, as follows:
"It may be taken as established law that the incidental benefit accruing to the public from the establishment of a large factory, mill, department store, or other industrial or commercial enterprise is not a valid ground for ranking such an enterprise as a public use and intrusting it with the power of acquiring a suitable site by eminent domain. Private enterprises that give employment to many and produce various kinds of commodities for the use of the people are not necessarily public uses. Every legitimate business, to a greater or less extent, indirectly benefits the public by benefiting the people who constitute the state, but that fact does not make such enterprises public businesses. * * *"
If a municipality can lease its land for fifty years for a hotel business under the theory that the same will indirectly benefit the public in the community, there is no reason why the municipality cannot lease its lands for any other legitimate private enterprise.
It is unnecessary at this time to decide whether or not the property in question *768 was acquired for park purposes or some other express municipal purposes. A municipality is only authorized to acquire lands for a municipal purpose or, at most, a public purpose. The land in this case was bought and paid for by public funds.
In the case of Hoskins v. City of Orlando, Fla., 5 Cir., 51 F.2d 901, 904, the "shoe was on the other foot." The City had acquired a 99-year lease on certain real estate which real estate was owned by Hoskins. He sued the City for two annual installments of $10,000 each which he claimed to be due under the terms of the lease. The Court discussed the question of whether or not the purchase of the lease was within the power of the City. In the opinion it is stated:
"* * * But a municipal corporation from its very nature and objects is limited in the property it may purchase, as in the activities in which it may engage. It buys and operates with money raised in the main by taxation, and municipal taxation in Florida is authorized for municipal purposes and none other. Florida Constitution, art. 9, § 5. Outlays of money, and especially debts to be paid in the future, can be made only for purposes expressly permitted by law to a municipality, or necessarily implied in order to accomplish its express powers. McQuillen, Munic. Corp. § 1216; Phipps v. Morrow, 49 Ga. 37; Avery v. United States, 6 Cir., 104 F. 711; [City of] Eufaula v. McNab, 67 Ala. 588, 42 Am. Rep. 118. The doctrine of ultra vires is much more strictly applied to it than to a private corporation, for the limits of its power depend on public law which all persons dealing with it are bound to know. `Municipal corporations are established for purposes of local government, and, in the absence of specific delegation of power, cannot engage in any undertakings not directed immediately to the accomplishment of those purposes.' * * *"
In the case of Tampa Northern R. Co. v. City of Tampa, 104 Fla. 481, 140 So. 311, 141 So. 298, no lease was involved and a special act of the Legislature expressly ratified the action which had been taken. In the case now before the Court we have no such validation by the Legislature and no special authority granted to the municipality. The case of Bailey v. City of Tampa, 92 Fla. 1030, 111 So. 119, is not authority for the attempted exercise of the power by the City of Clearwater in this case. In the Bailey case the City was acting under the express power granted to it by Chapter 5546, Acts of 1905, and Chapter 9095, Acts of 1921. Those acts authorized the action in question. The contract with the Board of Trade was approved in a special election for that purpose and the City reserved certain rights with reference to a portion of the building being erected to be used for municipal purposes. The Board of Trade itself was a quasi public corporation and its main purpose and object was to promote the general welfare of the City of Tampa. This case and other cases of similar nature granting special authority to a municipality have no bearing upon a case where the municipality is acting without a sufficient grant of power from the Legislature. See also State v. City of Tallahassee, 142 Fla. 476, 195 So. 402.
The opinion of the able Circuit Judge rendered in connection with the final decree shows an intensive study of the case and a thorough understanding of the questions involved. In his opinion he stated:
"Such issues of fact as may be raised by the pleadings are not of sufficient consequence to require a hearing in view of the conclusions reached hereinafter. The undisputed facts as revealed in the pleadings sufficed to enable the court to dispose of the case on the motion for final decree on bill and answer.
"The City of Clearwater acquired this property by direct purchase from general funds of the City. Although the resolution of the Town Council authorizing the purchase recited that the lands were to be used for a public park, there was no restriction placed in the *769 deed of conveyance. The City through its purchase acquired only an undivided one-fifth interest in certain lands and by partition suit later in 1914 converted its interest in the lands to absolute ownership. The City has used a portion or all of the lands from time to time for park purposes and in certain portions of the land now provides a pier, bathing beach, yacht basin, and docks and has also from time to time leased portions of the premises to be used for operating a miniature golf course, luncheonette, dance pavilion, bath house and restaurant, filling station and fish market. Apparently no objection has been made to these uses, all of which seem to have some direct relation to the use of the land as a park and recreational area for the citizens of the community. The City has now attempted to lease a portion of the unused land (which is at present unused but was at one time leased for short periods as a motel) for fifty years to the co-defendant Nelson under an agreement by him to build a combined hotel and apartment building on the premises.
"In light of the manner in which the City of Clearwater acquired this property and of the use to which it was thereafter devoted, the court is of the present opinion that the City was not required to use the land solely for park purposes but could use it for any legitimate municipal purpose or could sell and thus permanently dispose of it. Municipal authorities in various jurisdictions support such a conclusion and in addition both the City Charter and Section 167.09 Florida Statutes 1953, F.S.A., would seem to permit such use or sale.
"However, we are not now specifically upholding or denying the right of the city to sell the property or to devote it to some non-park but nevertheless legitimate municipal purpose, as we are not directly confronted with such a situation on the pleadings. On the contrary we have here an attempt to lease the land for fifty years for a strictly private purpose (as neither general statutory law nor the City Charter give the City authority to operate a hotel or to permit such operation on municipally owned lands). The Florida Supreme Court in State v. Town of North Miami, 59 So.2d 779 has clearly ruled that the statutory power and authority which a city has to acquire and hold property and to control and dispose of the same carries with it the necessary limitation that the same shall be for a municipal purpose.
* * * * * *
"It is conceded by the attorneys for the plaintiffs that a municipality may, as a matter of practical conservation of municipal assets, temporarily lease municipal property for private purposes; but only for a short term and pending a sale or devotion to a definite municipal purpose. To claim such authority could include a lease for fifty years is an unwarranted and unreasonable extension of what is at most a tolerated exception to general law and if such lease for such a term were to be permitted it would completely nullify the prohibition against such private use as declared in State v. Town of North Miami, supra. The Court therefore finds that the proposed lease is unlawful."
Having reached the conclusion which we have, it is unnecessary to consider other questions presented.
Affirmed.
ROBERTS, C.J., and THOMAS, HOBSON and DREW, JJ., and MURPHREE, Associate Justice, concur.
TERRELL, J., dissents.